UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re                                                                         Chapter 7

NFN BALGOBIN,                                                      Case No. 11-40049-CEC

                        Debtor.

----------------------------------------------------------------x

ROBERT L. GELTZER, as Trustee of the
Estate of NFN Balgobin,                                          Adv. Proc. No. 12-1061-CEC

                        Plaintiff,

            -against-

MARK BALGOBIN,

                        Defendant.

----------------------------------------------------------------x

<u>DECISION</u>

APPEARANCES:

Mark Bruh, Esq.                                          Vivian M. Williams, Esq.
The Law Office of Robert L. Geltzer            One Grand Central Place
1556 Third Avenue, Suite 505                     60 East 42nd Street, 46th Floor
New York, NY 10128                                 New York, NY 10165
Attorney for Plaintiff                                    Attorney for Debtor/Defendant

CARLA CRAIG
Chief United States Bankruptcy Judge

This matter presents a frequently encountered question: when can a claimed equitable interest in property in which the debtor holds legal title, asserted by a third party, be given effect in bankruptcy?  Here, the Chapter 7 trustee seeks turnover of an automobile titled in the debtor's name, but in possession of the debtor's son.  The debtor and his son contend that the debtor holds only legal title to the automobile, subject to the son's equitable interest, and that the vehicle therefore is not property of the estate.  Because the undisputed facts do not support the existence of an express trust, or the imposition of a constructive or resulting trust, the trustee's motion for summary judgment seeking turnover of the vehicle is granted.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

## BACKGROUND

NFN Balgobin (the "Debtor") filed a voluntary petition under Chapter 7 of Title 11, U.S.C. (the "Bankruptcy Code") on January 5, 2011, and was granted a discharge by order dated September 23, 2011.  On the Debtor's Schedule B, which lists personal property, the Debtor included a 2004 Cadillac Escalade (the "Vehicle"), but described it as "In Debtor's Son's possession," and valued the Debtor's interest in the Vehicle as "$0.00."  Chapter 7 Voluntary Petition at 19, No. 11-40049-cec, ECF No. 1.[1]

---

[1] "ECF No." refers to documents filed on this Court's electronic docket, identified by number.  Unless otherwise indicated, citations are to the electronic docket in Adversary Proceeding No. 12-1061.

On March 6, 2012, Robert L. Geltzer, as Chapter 7 trustee (the "Trustee") filed this adversary proceeding against the Debtor's son, Mark Balgobin (the "Defendant"), seeking an order requiring him to turn over the Vehicle to the Trustee pursuant to §§ 541 and 542 of the Bankruptcy Code.[2]  In his answer, the Defendant admitted that the Vehicle was in his possession, but denied that the Debtor is the owner of the Vehicle.  Answer ¶¶ 7, 9, ECF No. 5.  On August 1, 2012, the Trustee filed a motion for summary judgment, asserting that because the Debtor is the legal owner of the Vehicle, it is property of the estate under § 541, and because the Vehicle is in the Defendant's possession, it must be turned over to the trustee pursuant to § 542.  Pl.'s Motion for Summ. J., ECF No. 6.

The Defendant argues that although the Debtor holds title to the Vehicle, he owns no equitable interest in it.  The Defendant asserts that at the time the Vehicle was purchased, he had not obtained permanent residence in the United States, and therefore could not purchase the Vehicle in his own name.  For this reason, he and his father agreed that the Debtor would hold title to the Vehicle, but the Defendant would retain possession of it, own all equitable interest in it, and make all payments towards its purchase, maintenance, and insurance.  The Defendant asserts that pursuant to and in reliance upon this unwritten understanding, he has been in possession of the Vehicle since it was purchased, has fully paid for the Vehicle, and made all payments towards its maintenance and insurance.  For these reasons, the Defendant claims that under New York law, the Debtor holds title to the Vehicle subject to a constructive trust for the Defendant's benefit.  Def.'s Aff. in Op., ECF No. 11.

On August 13, 2012, the Trustee filed a second adversary proceeding, this time against the Debtor, seeking to revoke the Debtor's discharge on several grounds, including the Debtor's failure to turn over the Vehicle to the Trustee.  Case No. 12-1245-cec.

---

[2] Unless otherwise indicated, all statutory citations are to provisions of Title 11, U.S.C.

On October 23, 2012, the Debtor filed a motion to consolidate the two adversary proceedings, and to impress a constructive trust or resulting trust on the Vehicle under New York law. By this motion, the Debtor seeks a determination that he is "a mere holder of bare naked legal title [to the Vehicle] in whom NO equitable interest is reposed." Motion to Consolidate Adversary Proceedings and Impress Constructive Trust or Resulting Trust ¶ 16, ECF No. 12. In support of the motion to impose a constructive trust or resulting trust, the Debtor submitted an affidavit setting forth the circumstances of his unwritten agreement with his son, as well as affidavits of the Defendant and two other family members attesting to the existence of the agreement, and the Defendant's payment of all expenses relating to the Vehicle.

On November 29, 2012, the Trustee filed a reply, including opposition to the Defendant's motion to consolidate and impress a trust. The Trustee argues that a constructive trust should not be imposed because the Defendant has failed to establish the elements of a constructive trust in this case, and because the Defendant has failed to present evidence that the Debtor perpetrated an actual or constructive fraud upon the Defendant with respect to the Vehicle.[3]

## **DISCUSSION**

A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is considered material if it

---

[3] The Trustee also raises various issues concerning the form and credibility of the evidence submitted by the Defendant in support of his factual contentions. However, because, for the reasons set forth below, the Trustee's motion for summary judgment must be granted even assuming all of the Defendant's contentions of fact to be true, the Court will credit the version of events asserted by the Defendant for purposes of deciding this motion, without deciding whether the asserted deficiencies would warrant exclusion of this proffered evidence in other circumstances. For the same reason, it is also unnecessary to address the Trustee's contention that imposition of a constructive trust should have been sought by adversary proceeding pursuant to Bankruptcy Rule 7001.

"might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (citations omitted).  "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." <u>Brown v. Eli Lilly and Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011) (quotations omitted).

Here, the material facts are not in dispute, as the Trustee's summary judgment motion must be granted even if Defendant's and Debtor's factual assertions are true.

B. <u>Requirements for an Express Trust</u>

In this case, the Debtor and his son seek to give effect to an alleged oral agreement creating a trust vesting legal title to the Vehicle in the Debtor, and equitable title in the Defendant.  Under New York law, an express trust in real or personal property must meet certain statutory requirements, including that the trust be in writing.  <u>See</u> N.Y. Est. Powers & Trusts Law ("EPTL") §§ 1-2.20, 7-1.17 (McKinney 2013) ("Every lifetime trust shall be in writing and shall be executed and acknowledged by the person establishing such trust and, unless such person is the sole trustee, by at least one trustee thereof, in the manner required by the laws of this state for the recording of a conveyance of real property or, in lieu thereof, executed in the presence of two witnesses who shall affix their signatures to the trust instrument").[4]  It is

---

[4] Prior to 1997, a lifetime (inter vivos) trust in personal property could be created orally, so long as "the words and the acts relied upon [are] unequivocal in nature and admit of no other interpretation than that the property is held in trust." <u>In re Fontanella's Estate</u>, 304 N.Y.S.2d 829, 831 (App. Div. 3d Dep't 1969).  The New York legislature established formal requirements for lifetime trusts in 1997, including that a lifetime trust in personal property be in writing.  <u>See</u> <u>Fasano v. DiGiacomo</u>, 853 N.Y.S.2d 657, 659 (App. Div. 2d Dep't 2008) (<u>citing</u> Practice Commentaries to EPTL 7-1.17); <u>see also</u> Restatement (Third) of Trusts § 20 (2003).

undisputed here that no written trust was created in compliance with the statutory requirements.

In affidavits submitted in support of the motion to impose a constructive trust, the Debtor and Defendant allege that the Defendant "allowed" title to the Vehicle to be in the Debtor's name "on [the] basis of a relationship of trust and confidence," and that Defendant "fully performed his end of the agreement, having made ALL payments for the purchase of the Vehicle and having fully paid the Note on the Vehicle."  Aff. of NFN Balgobin ¶¶ 11, 12, ECF No. 12.

"While the doctrine of partial performance may operate to take a purported oral contract out of the statute of frauds, the doctrine should not be lightly applied." Gray v. Fill (In re Fill), 82 B.R. 200, 222(Bankr. S.D.N.Y. 1987) (citations omitted).  The Second Circuit has held that, in order to take an oral agreement out of the statute of frauds, part performance "must be performance 'unequivocally referable' to the agreement, performance which alone and without the aid of words or promise is unintelligible or at least extraordinary unless as an incident of ownership assured, if not existing."  Huntington Towers, Ltd. V. Franklin Nat'l Bank, 559 F.2d 863, 872 (2d Cir. 1977), cert denied, 434 U.S. 1012 (1978) (quoting Burns v. McCormick, 233 N.Y. 230, 232 (1922)).

Here, the Defendant's action in paying for the Vehicle, and paying the expenses of operation and maintenance, is not so "unintelligible or at least extraordinary" in the absence of a trust as to obviate the statutory requirement of a writing.  The Defendant needed a car for work, and was unable to purchase a vehicle in his own name because of his immigration status. Defendant has had exclusive possession and use of the car since it was purchased.  Aff. of Mark Balgobin ¶ 8, ECF No. 12.  Under these circumstances it is not extraordinary, or difficult to understand, why Defendant would pay for the Vehicle, even in the absence of an agreement by his father to hold title in trust for him.

In the absence of an express trust, the Debtor the Defendant seek to enforce their intent through the imposition of a constructive trust or a resulting trust.

C. <u>Constructive Trusts in Bankruptcy</u>

Under § 541(a), the commencement of a bankruptcy case creates an estate, which includes, subject to certain exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case," regardless of where the property is located or who holds it. § 541(a)(1). However, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest…becomes property of the estate only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." § 541(d). Thus, "the bankruptcy estate does not include property of others in which the debtor has some minor interest such as a lien or bare legal title." <u>Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)</u>, 874 F.2d 88, 93 (2d Cir. 1989) (quotation and citations omitted). "Where the debtor's conduct gives rise to the imposition of a constructive trust, so that the debtor holds only bare legal title to the property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold the property subject to the same restrictions." <u>Id.</u> (quotation and citations omitted). "A constructive trust, therefore, confers on the true owner of the property an equitable interest in the property superior to the trustee's," because "but for the debtor's misconduct, the trust beneficiary would have perfected his security interest in the rest of the trust and thus would have prevailed over the debtor as well as the debtor-in-possession." <u>Id.</u> (quotation and citations omitted).

In considering whether to impose a constructive trust in a bankruptcy case, the Second Circuit has cautioned that while bankruptcy law does not "trump" state constructive trust law, bankruptcy courts should "act very cautiously" in deciding whether to impose a constructive

trust on property that otherwise would be property of the estate.  Superintendent of Ins. for N.Y. v. Ochs (In re First Cent. Fin. Corp.), 377 F.3d 209, 217 (2d Cir. 2004); see also Ades and Berg Grp. Investors v. Breeden (In re Ades and Berg Grp. Investors), 550 F.3d 240, 243-45 (2d Cir. 2008) (reaffirming this principle).  As the Second Circuit explained:

> The chief purposes of the bankruptcy laws are to secure a prompt
> and effectual administration and settlement of the estate of all
> bankrupts within a limited period, to place the property of the
> bankrupt, wherever found, under the control of the court, for equal
> distribution among the creditors, and to protect the creditors from
> one another.  But by creating a separate allocation mechanism
> outside the scope of the bankruptcy system, the constructive trust
> doctrine can wreak ... havoc with the priority system ordained by
> the Bankruptcy Code.…[W]e believe it important to carefully note
> the difference between constructive trust claims arising in
> bankruptcy as opposed to those that do not, as the equities of
> bankruptcy are not the equities of the common law.

First Cent., 377 F.3d at 217-18 (quotations and citations omitted); see also Ades and Berg, 550 F.3d at 245 ("Recognizing different equities in different contexts…is simply a recognition that an equitable remedy is more or less appropriate when different interests are in play.")

Thus, "bankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason to do so," where a party seeks to impose a constructive trust against the bankruptcy estate, at the expense of creditors of the estate.  First Cent., 377 F.3d at 217.  See also Cadle Co. v. Mangan (In re Flanagan), 503 F.3d 171, 180 (2d Cir. 2007) ("The effect of a constructive trust in bankruptcy is profound. While the bankrupt estate is defined very broadly under § 541(a)(1) of the Bankruptcy Code to include all legal or equitable interests of the debtor, any property that the debtor holds in constructive trust for another is excluded from the estate pursuant to § 541(d)");  Brenner v. Heller (In re Lincoln Logs, Ltd.), No. 1:11–CV–481, 2011 WL 6011786 at *3 (N.D.N.Y. Nov. 30, 2011) (finding that constructive trust claim against the estate was not warranted under the facts before it, stating that "[i]n this case, where there are

numerous [other] unsecured creditors…, equity does not support the creation of a constructive

trust"); In re Bernard L. Madoff Inv. Secs., LLC, 458 B.R. 87, 131-32 (Bankr. S.D.N.Y. 2011)

(holding that a constructive trust claim was sufficiently alleged by the trustee against a third

party, but specifically distinguishing an action brought by the trustee to recover property for the

estate, from a constructive trust claim brought against the estate, to which heightened scrutiny

applies); In re Omegas Grp., Inc., 16 F.3d 1443, 1452 (6th Cir. 1994) ("Constructive trusts are

anathema to the equities of bankruptcy since they take from the estate, and thus directly from

competing creditors, not from the offending debtor.")

Here, because the Defendant and the Debtor seek to exclude the Vehicle from the estate,

at the expense of the Debtor's creditors, it is necessary to "act very cautiously" in considering the

Defendant's claim, and a constructive trust should only be imposed if there is "a substantial

reason to do so." First Cent., 377 F.3d at 217.

D.  Existence of a Constructive Trust as of the Petition Date

The Debtor argues that a constructive trust arose over the Vehicle prior to the petition

date, and thus the Vehicle never became property of the Debtor's estate under § 541.  In

determining whether a constructive trust should be imposed in a bankruptcy case, state law

applies.  See Howard's, 874 F.2d at 93.  "New York law generally requires four elements for a

constructive trust: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied;

(3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment."

First Cent., 377 F.3d at 212 (citations omitted).  "Although these factors provide important

guideposts, the constructive trust doctrine is equitable in nature and should not be 'rigidly

limited.'"  In re Koreag, Controle et Revision S.A., 961 F.2d 341, 352-53 (2d Cir. 1992) (citing

Simonds v. Simonds, 380 N.E.2d 189, 194 (N.Y. 1978)).

Assuming, for purposes of this decision, that a relationship of trust and confidence existed between the Defendant and his father; that there was an express or implied promise; and that the Debtor's purchase of the Vehicle constituted a "transfer" in reliance on that promise, the Defendant does not allege the requisite unjust enrichment to support the imposition of a constructive trust in this case.

Although there is disagreement whether, under New York law, a constructive trust arises when the conduct giving rise to the constructive trust occurs, see, e.g., Lane Bryant v. Vichele Tops (In re Vichele Tops, Inc.), 62 B.R. 788, 791 (Bankr. E.D.N.Y.1986) ("Where the title to property is acquired by one person under such circumstances that he is under a duty to surrender it, a constructive trust immediately arises....It would seem that there is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court"), or whether it arises when a judicial determination is made that it exists, see, e.g., Taub v. Taub (In re Taub), 427 BR 208, 220 (Bankr E.D.N.Y. 2010) ("Until the state court or this court issues an order [imposing a constructive trust], the [properties subject to a constructive trust action] are…property of the Debtor's estate under Bankruptcy Code Section 541"), there is no doubt that a constructive trust does not arise until, at the earliest, the constructive trustee "is under a duty to surrender [the property in question]." Vichele, 62 B.R. at 791; see also Quadrozzi v. Estate of Quadrozzi, 952 N.Y.S.2d 74, 77 (App. Div. 2d Dep't 2012) (cause of action for a constructive trust arises, and thus the statute of limitations begins to run, "upon the occurrence of the wrongful act from which a duty of restitution arises").  Where, as is alleged here, the constructive trust arises from wrongful retention of property, the duty of restitution does not arise until the constructive trustee "breaches or repudiates the agreement."  Quadrozzi, 952 N.Y.S.2d at 77; see also In re Fischer, No. 01-CV-2717, 2001 WL 1923359 at * 9 (E.D.N.Y. Aug. 21,

2001) ("a claim does not accrue until a constructive trustee repudiates his duties to the beneficiary.").

Although the elements of a constructive trust are regarded as "guideposts," unjust enrichment "is the most important since the purpose of the constructive trust is prevention of unjust enrichment." First Cent., 377 F.3d at 212 (citations and quotation omitted). Unjust enrichment is present, and thus a constructive trust may be warranted, only where such relief is "necessary to satisfy the demands of justice," meaning "that a party hold[s] property 'under such circumstances that in equity and good conscience he ought not to retain it.'" Golden Budha Corp. v. Canadian Land Co. of Am., N.V., 931 F.2d 196, 202 (2d Cir. 1991) (citing Simonds, 380 N.E.2d 189).

"While a showing of actual fraud or wrongful conduct is not strictly required for a constructive trust, New York law is clear that a constructive trust is an equitable remedy intended to be 'fraud-rectifying' rather than 'intent-enforcing.'" First Cent., 377 F.3d at 216 (citations omitted). The First Central court noted several instances where New York state courts declined to grant constructive trusts claims that were brought to effectuate the intent of the parties, absent any misconduct by the party against whom the constructive trust is sought to be imposed. Id. For example, in Binenfeld v. Binenfeld, 537 N.Y.S.2d 41 (App. Div. 2d Dep't 1989), the court declined to impose a constructive trust where the proponent of the constructive trust argued that his deceased mother "intended to convey the house to him, but failed to do so," since he did "not allege that his deceased mother perpetrated an actual or constructive fraud upon him." First Cent., 377 F.3d at 216 (quoting Binenfeld, 537 N.Y.S.2d at 42). As the Binenfeld court explained,

> Although the facts may reveal a case of unrealized expectations,
> we may not, without more, fashion a constructive trust.... Decedent

- 10 -

> may well have had a moral obligation to give the property to [the
> appellant] but such an obligation is not enough to set a court in
> motion to compel the devolution of property in a certain way.

Id. (quoting Binenfeld, 537 N.Y.S.2d at 42-43). Similarly, in Plotnikoff v. Finkelstein, 482

N.Y.S.2d 730 (App. Div. 1st Dep't 1984), the court acknowledged that "unjust enrichment does

not require the performance of any wrongful act by the one enriched," but nevertheless found

that absent "fraud or overreaching" by the plaintiff's daughter in having title to a condominium

placed in her name, she was not unjustly enriched.  Id. (quoting Plotnikoff, 482 N.Y.S.2d at 732-

33).

Likewise, in the cases cited by the Debtor and the Defendant, courts have imposed a

constructive trust only after finding some inequitable conduct by the party against whom the trust

was imposed.  See McKinley v. Hessen, 202 N.Y. 24 (1911) (imposing constructive trust after

sister repudiated agreement with her brother to hold title to certain real property, and convey it at

his direction); Thomas v. Thomas, 896 N.Y.S. 2d 30 (App. Div. 1st Dep't 2010) (holding that a

cause of action for imposition of a constructive trust was adequately pleaded to survive a motion

to dismiss, where complaint alleged that the defendant had agreed to temporarily take title in her

name in exchange for $5,000, and thereafter refused to transfer title back to plaintiffs); Jeremiah

v. Pritcher, 49 N.Y.S. 788 (App. Div. 2d Dep't 1898) (imposing trust over property after

daughter refused to comply with agreement with her father to hold title in her name, and convey

it at his direction); Bey Const. Co., Inc. v. Yablonski, 428 N.Y.S.2d 728, 728-29 (App. Div. 2d

Dep't 1980) (although referring to a constructive trust as being "created" at the time the property

is transferred, recognizing that a cause of action for imposition of a constructive trust

"commences at the time of the wrongful event"); In re Turley's Estate, 289 N.Y.S. 704, 707

(N.Y. Sur. 1936) (imposing a constructive trust on unissued stock certificates of corporation used

by decedent to purchase property, citing the "recognition of a constructive trust effecting an interest in land where a confidential relation would be abused if there were *repudiation without redress* of a trust orally declared") (emphasis added).

      For this reason, the few cases in this Circuit in which a constructive trust has been imposed against a bankruptcy estate have found some pre-petition unjust conduct by the debtor relating to the property upon which the constructive trust was sought to be imposed.  See, e.g., Fischer, 2001 WL 1923359 (finding triable issue of fact whether constructive trust should be imposed against real property held by the debtor as of the petition date, where the debtor was alleged to have defrauded  plaintiffs pre-petition); Goldberg v. Hilsen (In re Hilsen), 119 B.R. 435, 439 (S.D.N.Y. 1990) (finding that constructive trust could be imposed against Chapter 7 debtor-husband's estate if his pre-petition purchase of an apartment in his own name "illegally usurped, by fraud or otherwise," his wife's right to purchase the property); accord Howard's, 874 F.2d at 94-95 (holding that there was "unjust enrichment," required to impose a constructive trust under New Jersey law, where the debtor moved its inventory to a different state six months prior to the petition date without the plaintiff's knowledge, thereby preventing the plaintiff from perfecting its security interest in the inventory); City Nat'l Bank of Miami v. Gen. Coffee Corp. (In re Gen. Coffee Corp.), 828 F.2d 699 (11th Cir. 1987) (finding a constructive trust arose under Florida law at the time the debtor perpetrated a pre-petition fraud upon the plaintiff).[5]

---

[5] Other cases have employed the term "constructive trust" when excluding from the estate property which is held by the Debtor, but which is subject to a pre-petition obligation to transfer that property to another party.  See, e.g., In re Szewczyk, 307 B.R. 741 (Bankr. W.D.N.Y. 2004) (where joint debtor spouses neglected to designate their children as beneficiaries of their reciprocal life insurance policies, as required by a prepetition Property Settlement Agreement, before filing for bankruptcy, the court imposed a constructive trust in favor of the children); Committee of Unsecured Creditors v. Gottesman Co. (In re Rama Gp.), 2002 WL 1012974 at *2 (W.D.N.Y. 2002) (imposing constructive trust on broker's commission from the pre-petition sale of property that was not transferred to the broker, stating that "the court has the power to compel the parties to do that which ought to be done and which was contemplated by the parties at the time of the transaction"); Yonkers Board of Educ. V. Richmond Children's Center, 58 B.R. 980 (S.D.N.Y. 1986) (imposing constructive trust on "pass through" tuition payments made to the debtor by New York State, to be forwarded to the local school district for tuition of the children residing in the

Applying these principles, the Defendant's allegations do not support the imposition of a constructive trust. The Defendant does not claim that the Debtor attempted to repudiate their alleged agreement, and does not allege any misconduct, overreaching, or inequitable behavior by the Debtor. To the contrary, the Debtor and his attorney have filed affidavits in support of the Defendant's claimed interest in the Vehicle, and the Debtor's attorney states that the Debtor "washes [his] hand from any claim of ownership of the Vehicle." Attorney's Aff. in Support 7, ECF No. 14. The factual circumstances in this case provide a clear example of an attempt by the parties to an alleged oral agreement to utilize a constructive trust as an "intent-enforcing," rather than a "fraud-rectifying" remedy. Because no enforceable express trust exists here, the parties are seeking to invoke the remedy of constructive trust to enforce a non-enforceable agreement. This is precisely the "intent-enforcing" use of a constructive trust that is prohibited under New York law.

Moreover, there is no inequity in requiring the Defendant to surrender the Vehicle for the benefit of his father's creditors. The Defendant derived substantial benefit from the arrangement, as he could not have held title in his own name, and was only able to acquire his claimed interest in the Vehicle through the Debtor's representation to the seller and the financing company that the Debtor was the owner of the Vehicle. Moreover, keeping title in the Debtor's name caused the Vehicle to be shielded from the Defendant's creditors, and would have allowed him to disclaim legal responsibility for the Vehicle. It would be inequitable to allow the Defendant to reap these benefits, yet allow him to claim equitable ownership of the Vehicle now to shield it from his father's creditors.

---

debtor's treatment residence, finding that the funds were "not for the financial benefit of the [debtor], but intended rather for the sole benefit of the children, and known so to be by the recipients"). These cases are inapposite here, as there is no claim that the Debtor had an obligation to transfer title to the Vehicle to the Defendant.

    <u>Waldorf v. Wallach (In re Waldorf)</u>, No. CIV-90-1132, 1991 WL 129805 (W.D.N.Y. July 9, 1991), addressed a factual scenario similar to the instant case, and, although decided on a different legal theory, is instructive.  The debtor in that case acquired legal title to an automobile for the purpose of obtaining lower insurance premiums for his son, and argued that because he held only bare legal title, the automobile should not be included in the estate.  <u>Id.</u> at *1.  The trustee did not dispute that the son was the equitable owner of the vehicle, but argued that his powers as a judicial lien creditor under § 544(a)(1) allowed him to avoid the debtor's son's interest.  <u>Id.</u>

    The court concluded that the trustee's interest was superior, relying on New York's "policy of compelling truthfulness in obtaining and possessing certificates of title," as evidenced by provisions of New York's Vehicle and Traffic Law that make it a felony to, "with fraudulent intent…make[ ] a material false statement…, or conceal [ ] any other material fact, in an application for a certificate of title"; require that a representation of ownership be made when applying for a certificate of title; and establish that a certificate of title constitutes "prima facie evidence of the facts appearing on it."  <u>Id.</u> at *2-3 (<u>citing</u> N.Y. Veh. & Traf. L. 2130(d), 2111(a), 2108(c)).  The court further noted that "there is case law suggesting that representations contained in a vehicle registration will not be rebuttable when doing so would relieve the record owner of certain liability or responsibility."  <u>Id.</u> at *3 (<u>citing</u> <u>Soos v. Soos</u>, 162 N.Y.S.2d 373 (Niag.Co.Ct.1956) (plaintiff not permitted to sue for damages where he was not the registered owner of the car); <u>People v. Simon</u>, 33 N.Y.S.2d 14, 16 (Erie Co.Ct.1942) ("the registration of a vehicle by a person is prima facie evidence of his ownership…and where one has deliberately caused a car to be registered in his name as owner, he may not, after it has been involved in an accident…, deny the truth of that statement")).

The court also noted that a constructive trust would be inappropriate given the absence of any allegation of unjust conduct on the part of the debtor:

> [T]here are circumstances where a trust relationship determined to exist prior to the filing of the bankruptcy petition can serve to exclude from a bankruptcy estate property with respect to which the equitable owner lacks legal title only because of some fraud on the part of the debtor. See In re Howard's Appliance Co., 874 F.2d 88 (2d Cir.1989) ("a constructive trust should 'be impressed in any case where to fail to do so will result in an unjust enrichment' "). However, this is not such a case. The misrepresentation by Charles to the Department of Motor Vehicles was done with full knowledge and approval of Jeffrey—indeed, for his benefit. Accordingly, such cases are inapposite to the matter sub judice.

Id. at *3, n.2.

Although the argument that the Trustee has superior title to the Defendant under § 544(a) has not been raised, and will not be addressed in this Decision, New York's "public policy of compelling truthfulness in obtaining and possessing certificates of title" provides further reason to reject the Debtor's and the Defendant's contention that the equities of this case support imposition of a constructive trust on the Vehicle.

Because no constructive trust existed as of the petition date, both the equitable and legal title to the Vehicle became property of the estate on the petition date under § 541.

E. Constructive Trust Based Upon the Trustee's Actions

To the extent the Defendant contends that the estate would be unjustly enriched by the Trustee's actions in seeking turnover of the Vehicle, this contention must also be rejected. In First Central, the Second Circuit pointed out the difficulty with asserting a constructive trust claim predicated on a Chapter 7 trustee's efforts to marshal assets for the estate. There, the Chapter 7 trustee sought to retain a tax refund, upon which the debtor's subsidiary, FCIC, sought

to impose a constructive trust.  In addressing whether the conduct of the trustee, in seeking to

retain the refund, could warrant imposition of a constructive trust, the court explained:

> FCIC does not allege fraud or other misconduct in connection with
> the Trustee's determination to hold on to the refund. No one
> disputes that the Trustee's conduct is fully consistent with-and
> indeed, required by-the obligation imposed by the Bankruptcy
> Code to marshal and preserve estate assets. See 11 U.S.C. § 704;
> Cent. States, S.E. & *217 S.W. Areas Pension Fund v. Cent.
> Transp., Inc., 472 U.S. 559, 572, 105 S.Ct. 2833, 86 L.Ed.2d 447
> (1985) ("One of the fundamental common-law duties of a trustee is
> to preserve and maintain trust assets ... The trustee is thus expected
> to use reasonable diligence to discover the location of the trust
> property and to take control of it without unnecessary delay.")
> (internal citations and quotation marks omitted); Matter of Nat'l
> Hosp. & Institutional Bldrs. Co., 658 F.2d 39, 44 (2d Cir.1981)
> (emphasizing that "the purpose of the bankruptcy laws [is] to allow
> the trustee without delay to marshal and administer the assets of
> the debtor"). Nor is there any dispute that [the debtor]'s inability to
> honor the Agreement resulted not from misconduct, but from the
> operation of the Code. In essence, FCIC does not seek a
> constructive trust as a "fraud-rectifying" remedy, but as a means to
> enforce the intention of the parties as reflected in the Agreement.
> This position, however, conflicts with the reality that the
> expectations, at least of unsecured creditors, are nearly always
> frustrated in Chapter 7 proceedings where contracts are
> dishonored, investments are lost, and businesses disappear. While
> FCIC may understandably chafe at being required to accept less
> than it was otherwise entitled to receive under the Agreement, the
> short-and conclusive-answer is that this is not injustice, it is
> bankruptcy.

First Cent., 377 F.3d at 216-217.  As in First Central, it is not alleged that the Trustee engaged in

any misconduct in seeking to obtain property titled in the Debtor's name, and no "injustice" can

be said to have occurred based on the Trustee's efforts to marshal assets for unsecured creditors.

Thus, a constructive trust cannot be imposed on this basis.

     The conclusion that a constructive trust may not be imposed in this case is consistent with

the result reached in Foreman v. Foreman, 251 N.Y. 237 (1929).  There, the court imposed a

constructive trust in favor of a husband over property to which his deceased wife held legal title

upon her death, and which would have otherwise passed to her son.  The court noted that the husband had paid for the property, and had thereafter "collected all the rents…paid the taxes, the insurance premiums, the interest on the mortgages, and the costs of improvements and repairs." Id. at 239-40.  In finding an "abuse of confidence" to warrant imposition of a constructive trust, the court stated that "[t]he wife would have been guilty of an abuse of confidence by disclaimer during life. Her heir will not be suffered to nullify her submission to the call of equity and honor by disclaimer after death."  Id. at 241.  By contrast, a trustee performing his duty to marshal assets for creditors does not engage in an "abuse of confidence" in seeking turnover of property, as can be said of an heir who repudiates "the call of equity and honor" by disclaiming his stepfather's interest in the property upon his mother's death.[6]  As the Second Circuit noted in First Central, "the equities of bankruptcy are not the equities of common law."  377 F.3d at 217.

F.  Resulting Trust

The Debtor and the Defendant argued that, in the alternative, a resulting trust should be imposed on the Vehicle.  Although the Defendant appears to have abandoned this argument, an analysis of the law of resulting trusts in New York dispels any idea that a resulting trust could arise in this case, and also reinforces the conclusion that imposition of a constructive trust is inappropriate.

There are three factual circumstances where a resulting trust can arise: "(1) where an express trust fails in whole or in part; (2) where an express trust is fully performed without exhausting the trust estate; [or] (3) where property is purchased and the purchase price is paid by one person and at his direction the vendor conveys the property to another person."  Saulia v.

---

[6] It should be noted that under circumstances similar to those in Foreman, the Appellate Division, Second Department in 1989 declined to impose a constructive trust absent evidence of an "actual or constructive fraud." Binenfeld, 537 N.Y.S.2d at 42-43 ("Decedent may well have had a moral obligation to give the property [to the appellant] but such an obligation is not enough to set a court in motion to compel the devolution of property in a certain way").

Saulia, 295 N.Y.S.2d 980 (App. Div. 2d Dep't 1968) (quoting 4 Scott, Trusts [2d ed.], § 404.1, p.

2922).  The first two circumstances are inapplicable here, as they arise only where "there is an

express trust, but its terms do not provide for what is to happen if the trust fails or if there is a

surplus."[7]  6 Scott & Ascher on Trusts at § 40.1.1 (5th Ed. 2009).

The third scenario is known as a "purchase-money resulting trust," in which the property

is held in trust by the title holder for the person who paid the purchase price.  However, this type

of resulting trust was abolished in New York by statute in 1830, except in circumstances where

"title is taken without consent of the person who paid the consideration, or if the property was

purchased with another person's money in violation of a trust."  Kramer v. Sooklall (In re Singh),

434 B.R. 298, 306 (Bankr. E.D.N.Y. 2010) (citing Mendel v. Hewitt, 555 N.Y.S.2d 899, 901

(App. Div. 3d Dep't 1990)); see EPTL § 7-1.3.[8]  As neither of these two exceptions to the

statutory abolition of purchase money resulting trusts is claimed to exist here, there is no ground

for imposing a resulting trust in this case.

Consideration of the facts alleged by the Debtor and his son in light of New York law

concerning express and resulting trusts also bolsters the conclusion that a constructive trust is

inappropriate in this case.  Where, as in this case, parties seek to enforce their intent, an express

---

[7] An express trust fails where, for example, the settlor fails to name a beneficiary, names a nonexistent or unascertainable beneficiary, where the beneficiary renounces the beneficial interest, or the disposition is void for illegality.  See Scott & Ascher, supra, at § 41.1.1.  The second scenario arises "when the trust instrument does not dispose of the entire beneficial interest."  Id. at § 42.1.1.

[8] This section provides that:

A disposition of property to one person for a valuable consideration paid, in whole or in part, by another is presumed fraudulent as against the creditors of the payor at the time of such disposition and, unless the presumption is rebutted, a trust results in favor of such creditors to the extent necessary to satisfy their claims; but title to the property vests in the transferee and no trust results to the payor unless the transferee either:
(1) Takes such property, in his own name, as an absolute transfer without the consent or knowledge of the payor; or
(2) In violation of some trust, purchases the property so transferred with money or property belonging to another.

or resulting trust, not a constructive trust, is the appropriate vehicle.  See Soles v. Stevenson, 278

N.Y.S. 2d 922, 927 (N.Y. Sup. Ct. 1967) (citing 89 C.J.S. Trusts, § 139) ("The feature which

distinguishes [c]onstructive trusts from express trusts and resulting trusts is that the former do

not arise by virtue of agreement or intention, either actual or implied, [b]ut by operation of law,

or, more accurately, by construction of the court, and that result is reached in such instances

regardless of, and ordinarily contrary to, any intention to create a trust.");  In re Enron Corp., No.

02–2727 A, 2003 WL 1571719 at *5 (Bankr. S.D.N.Y. Mar. 27, 2003) (citing Zack v.

Guzauskas, 171 Conn. at 103, 368 A.2d at 196) ("Unlike a constructive trust, a resulting trust

arises to enforce a presumed or inferred intent.").

Moreover, the reasons for abolition of purchase money resulting trusts in New York

further highlight why the Defendant cannot enforce his claim of equitable title in this case.   As

explained in the commentary to EPTL § 7-1.3,

> Under the early common law, if one person bought land and had
> title placed in the name of another, a trust resulted for the benefit
> of the person who paid for it, an arrangement that had the effect of
> protecting the payor (the beneficiary) from his or her creditors. In
> addition, creditors of the trustee, relying on the unrestricted title in
> his or her name, would have no way of knowing of the trust. The
> legislature abolished these "purchase money resulting trusts" in the
> Revised Statutes of 1830 to prevent the creation of secret trusts and
> to protect the trustee's creditors....The exceptions provide a remedy
> when there has been fraud on, rather than fraud by, the payor."

EPTL § 7-1.3 (Margaret Valentine Turano, Practice Commentaries).

These equitable considerations, which led the New York legislature to conclude that a

purchase money resulting trust should not be available on facts such as are presented in this case,

also underscore why a constructive trust is inappropriate here.  Although there is no allegation

that the Defendant or the Debtor entered into this arrangement with intent to shield assets from

creditors, the result, if Defendant's claimed equitable interest were given effect, would be to

shield the Vehicle from the claims of creditors of the Debtor, and from the claims of creditors of the Defendant as well.  It would be inappropriate to allow the Debtor and the Defendant to invoke a constructive trust, which is a fraud-rectifying remedy, to accomplish this result.

For all of these reasons, the Defendant's claim of equitable ownership of the Vehicle cannot be given effect in this case.

## <u>CONCLUSION</u>

For the reasons set forth above, the Defendant's motion to impose a trust is denied, and the Trustee's motion for summary judgment is granted. Because summary judgment will be entered in favor of the Trustee, the portion of the Defendant's motion that seeks to consolidate for trial this adversary proceeding with Adversary Proceeding No. 12-1245-cec is moot. A separate order and a judgment will issue.



Dated: Brooklyn, New York
      March 22, 2013

_____
**Carla E. Craig**
**United States Bankruptcy Judge**